UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:26-cv-04219-AB-DMK | Date: | August 25, 2026 |
|---|---|---|---|

| Title: | *Christopher Knaak v. Insight Payroll Associates Inc.* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Evelyn Chun | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings: [In Chambers] ORDER DENYING PLAINTIFF'S MOTION FOR REMAND [Dkt. No. 12]**

Before the court is Plaintiff Christopher Knaak's ("Plaintiff") Motion for Remand ("Mot.," Dkt. No. 12). Defendant Insight Payroll Associates Inc. ("Defendant") filed an opposition ("Opp'n.," Dkt. No. 17) and Plaintiff filed a reply ("Reply," Dkt. No. 18). Plaintiff's Motion for Remand is **DENIED**.

## I. FACTUAL BACKGROUND

On September 21, 2025, Plaintiff began working for Defendant as a Western Regional Sales Manager at a salary of $2,000 per week. Compl. ¶ 10. Plaintiff worked remotely from his home in Camarillo, California, where his primary responsibilities included selling Defendant's payroll services to prospective clients. *Id.*

Shortly after beginning his employment, Plaintiff allegedly became concerned that Defendant's marketing materials advertised payroll services at prices significantly lower than those ultimately charged to customers. *Id.* at ¶ 12. Plaintiff alleges that he raised these concerns with Defendant's management and, on September 26, 2025, informed Defendant's Chief Executive Officer ("CEO") that

Defendant was engaging in false advertising. *Id.* at ¶ 13. Plaintiff alleges that shortly thereafter Defendant removed his sales leads. *Id.*

Plaintiff further alleges that, on October 19, 2025, he sent the CEO a written email reiterating his concerns regarding Defendant's advertising practices. *Id.* at ¶ 14. According to Plaintiff, the CEO responded by telling Plaintiff that he should resign. *Id.*

The following day, October 20, 2025, Defendant terminated Plaintiff's employment. *Id.* at ¶ 15. Plaintiff alleges that Defendant notified him electronically, revoked his access to Defendant's computer systems, and subsequently informed him of his termination by email and voicemail. *Id.* at ¶ 16. Plaintiff contends that Defendant terminated his employment in retaliation for reporting what he believed to be unlawful business practices. *Id.* at ¶¶ 15-16.

## II. PROCEDURAL HISTORY

On February 13, 2026, Plaintiff filed this action in the Superior Court of California for the County of Ventura. The Complaint asserts ten causes of action: (1) wrongful termination in violation of public policy; (2) whistleblower retaliation; (3) retaliation for exercising labor code rights; (4) negligent hiring, supervision, and retention; (5) failure to reimburse business expenses; (6) failure to timely pay final wages; (7) failure to provide itemized wage statements; (8) failure to maintain required payroll and employment records; (9) failure to provide employment records upon request; and (10) unfair business practices. Compl. at 1. Plaintiff seeks damages in the form of unpaid wages, unreimbursed business expenses, compensation for lost benefits, statutory penalties, attorney's fees, and punitive damages. Compl. Prayer for Relief ("Prayer") at 12-13.

Defendant was served by substituted service on March 5, 2026, which became effective on March 22, 2026. Defendant filed an Answer in state court and removed the action to this Court on April 21, 2026, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, asserting diversity jurisdiction. Notice of Removal ("NOR," Dkt. No. 1) ¶ 9, 37-38.

Plaintiff filed the instant Motion to Remand on May 22, 2026, arguing that although complete diversity is undisputed, Defendant failed to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000.

## III. DISCUSSION

### A. Legal Standard

A defendant may remove a civil action from state court to federal district court based on diversity of citizenship if there is complete diversity between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). The removal statute is strictly construed against removal jurisdiction. *Gaus v. Mills, Inc.* 980 F.2d 564, 566 (9th Cir. 1992). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (internal quotation marks omitted). Diversity jurisdiction must be rejected if there exists any doubt as to the right of removal. *Id.*

### B. Complete Diversity

For purposes of diversity jurisdiction, to demonstrate citizenship, "a party must (a) be a citizen of the United States, and (b) be domiciled in a state of the United States." *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). A person's domicile is determined by the location in which the individual has established a fixed habitation with the intention to remain there permanently or indefinitely. *Owens v. Huntling*, 115 F.2d 160, 162 (9th Cir. 1940). Domicile is determined at the time the lawsuit is filed and at the time of removal. *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131-32 (9th Cir. 2002).

Corporations are citizens of "(1) the state under whose laws it is organized or incorporated; and (2) the state of its principal place of business." *Bengtsson v. Caris MPI, Inc.*, No. 2:22-CV-02894-MEMF, 2022 WL 2764367, at *2 (C.D. Cal. July 13, 2022). A corporation's principal place of business is determined by the location of its "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 78 (2010) The nerve center is the place in which the corporations' officers "direct, control, and coordinate the corporation's activities." *Id.*

The parties do not dispute that complete diversity exists. Plaintiff is a citizen of California. NOR ¶¶ 10-13. Defendant is incorporated in Minnesota and maintains its principal place of business in Minnesota. NOR ¶¶ 10–15. Because Plaintiff and Defendant are citizens of different states, as defined under diversity jurisdiction, the Court finds that the complete diversity requirement is satisfied.

### C. Amount In Controversy

The amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if they were to prevail. *Chavez v. JPMorgan*

*Chase & Co.* 888 F.3d 413, 418 (9th Cir. 2018). Where, as here, the complaint does not allege a specific amount in damages, the removing defendant must establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Id.* at 416. This requires more than a conclusory allegation, but it does not require the defendant to prove that the plaintiff will actually recover the amount alleged. *Id.* The amount in controversy reflects the amount at stake in the litigation, not the amount ultimately recoverable. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). It may include "damages (compensatory, punitive, or otherwise) […] as well as attorneys' fees awarded under fee shifting statutes." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648-49 (9th Cir. 2016). "In meeting its burden, the defendant may rely on reasonable assumptions in calculating the amount in dispute." *Jauregui v. Roadrunner Transp. Serv.'s, Inc.*, 28 F.4th 989, 993 (9th Cir. 2022). In making its determination, the Court may consider the allegations in the Complaint, the Notice of Removal, and any summary-judgment-type evidence relevant to the amount in controversy. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).

Defendant calculates the amount in controversy as $172,567. NOR ¶ 38. Defendant's breakdown is as follows:

| Alleged Damages | Def's Estimated Amount in Controversy |
|---|---|
| Lost Wages | $52,000 |
| Punitive Damages (Estimate) | $45,000 |
| Unpaid Wages | $2,000 |
| Labor Code § 1102.5 | $10,000 |
| Labor Code § 98.6 | $10,000 |
| Labor Code §§ 201-203 | $12,000 |
| Labor Code § 1198.5 | $750 |
| **Total Before Fees** | **$131,750** |
| Attorney Fees (33% Estimate) | $42,817 |
| **Total** | **$174,567** |

Plaintiff challenges Defendant's calculation as speculative, arguing primarily that Defendant assumes uninterrupted unemployment, relies on unrelated punitive damages verdicts, and estimates attorneys' fees without case-specific evidence. Mot. at 4-6. The Court addresses each category in turn.

### i. Lost Wages

Defendant estimates Plaintiff's alleged lost wages at approximately $52,000 by multiplying Plaintiff's alleged weekly salary of $2,000 by the twenty-six weeks

between Plaintiff's termination on October 20, 2025, and Defendant's removal of this action on April 21, 2026. NOR ¶¶ 22–24. Plaintiff argues that Defendant's calculation is speculative because it assumes Plaintiff remained unemployed throughout the entire period and ignores Plaintiff's duty to mitigate damages. Mot. at 5. This argument is without merit.

Removal jurisdiction "depends on the state of affairs when the case is removed." *Soto v. Kroger Co.*, 2013 WL 3071267, at *3 (C.D. Cal. June 17, 2013) (holding the guiding principle is to measure the amount in controversy at the time of removal). The complaint expressly alleges Plaintiff earned $2,000 per week and seeks recovery of lost employment benefits resulting from his allegedly unlawful termination. Compl. ¶¶ 10-15; *see also* Compl. Prayer for Relief ("Prayer") at 12. Defendant's calculation relies directly upon those allegations and measures Plaintiff's alleged wage loss only through the date of removal, a period of 26 work weeks. NOR 22-24.

Plaintiff is correct that a prevailing employee has a duty to mitigate damages. *See Parker v. Twentieth Century-Fox Film Corp.*, 3 Cal. 3d 176, 181 (1970) (recognizing that a wrongfully discharged employee must make reasonable efforts to obtain substantially similar employment). However, mitigation is an affirmative defense in which binding precedent counsels against considering when determining the amount in controversy. *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020); *see also Reese v. Daikin Comfort Tech. Distrib., Inc.*, 729 F. Supp. 3d 980, 986 (C.D. Cal. 2024) (rejecting plaintiff's argument that for purposes of calculating the amount in controversy, estimated lost wages should be reduced due to alternative employment); *Jackson v. Compass Grp. USA, Inc.*, 2019 WL 3493991, at *4 (C.D. Cal. July 31, 2019) ("[M]itigation of damages is an affirmative defense, and a potential defense does not reduce the amount in controversy for purposes of establishing federal jurisdiction.") (internal quotation marks omitted).

Because Defendant's calculation is based directly upon Plaintiff's alleged rate of pay and the time period between termination and removal, the Court finds Defendant's estimate reasonable. Accordingly, the Court includes approximately $52,000 in alleged lost wages in calculating the amount in controversy ($2,000 per week x 26 weeks).

**ii. Unpaid Wages & Labor Code Penalties**

Defendant also includes several statutory penalties arising under the California Labor Code. Plaintiff does not specifically challenge Defendant's calculations with

respect to unpaid wages or the statutory penalties available under the Labor Code. Rather, Plaintiff's Motion and Reply focus primarily on Defendant's calculations of lost wages, punitive damages, and attorneys' fees. Accordingly, because Defendant's calculations are neither contested by Plaintiff nor questioned by the Court and are reasonably supported by the allegations of the Complaint and the applicable statutory provisions, the Court includes those amounts in determining the amount in controversy. See *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (holding that a defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court).

First, Defendant includes $2,000 in unpaid wages based on Plaintiff's allegation that Defendant failed to pay Plaintiff for his first week of employment. Prayer ¶ c. Plaintiff does not dispute Defendant's calculation. Accordingly, the Court includes $2,000 in the amount in controversy.

Second, Defendant includes a $10,000 civil penalty pursuant to Cal. Lab. Code § 1102.5. Plaintiff alleges Defendant retaliated against him after he reported what he believed to be unlawful business practices, in violation of the statute. Prayer ¶ g. Section 1102.5(f)(1) provides that, "[i]n addition to other remedies available, an employer is liable for a civil penalty not exceeding ten thousand dollars ($10,000) per employee for each violation of this section." Cal. Lab. Code § 1102.5(f)(1). Defendant calculates the civil penalty based on a single alleged violation, for purposes of removal, and therefore includes $10,000 in its calculation of the amount in controversy. Plaintiff does not challenge Defendant's methodology or calculation, and the Court finds the estimate reasonably supported by the allegations of the Complaint. Accordingly, the Court includes $10,000 in the amount in controversy.

Third, Defendant likewise includes a $10,000 civil penalty pursuant to Cal. Lab. Code § 98.6. Plaintiff alleges Defendant retaliated against him for engaging in conduct protected by the statute. Prayer ¶ g. Section 9.6(b)(3) similarly provides that, "[i]n addition to other remedies available, an employer who violates this section is liable for a civil penalty not exceeding ten thousand dollars ($10,000) per employee for each violation of this section." Cal. Lab. Code § 98.6(b)(3). Defendant again assumes only a single statutory violation and includes $10,000 in its amount in controversy calculation. Because Plaintiff does not dispute Defendant's calculation and the Court finds it supported by the allegations in the Complaint, the Court includes $10,000 in the amount in controversy.

Fourth, Defendant includes $12,000 in waiting time statutory penalties pursuant to Cal. Lab. Code §§ 201, 202, and 203. Sections 201 and 202 require an employer

to timely pay all earned wages immediately upon discharge, or, in the case of an employee who resigns without notice, within seventy-two hours of separation. Cal. Lab. Code §§ 201(a), 202(a). Where an employer willfully fails to timely pay wages required under sections 201 or 202, section 203(a) provides that "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid," not to exceed thirty days. Cal. Lab. Code § 203(a). Plaintiff alleges Defendant failed to timely pay his first week's wages owed upon his termination and seeks waiting time penalties under these provisions. Prayer ¶ f. Defendant calculates the penalty using Plaintiff's alleged weekly rate of $2,000, or $400 daily, and multiplies that by the statutory maximum of 30 days, resulting in a total of $12,000 ($400 per day x 30 days). Plaintiff does not challenge Defendant's calculation, and the Court finds the amount was reasonably derived from Plaintiff's rate of pay and the statutory formula. Accordingly, the Court includes the $12,000 in the amount in controversy.

Finally, Defendant includes $750 pursuant to Cal. Lab. Code § 1198.5. Plaintiff alleges Defendant failed to provide his personnel records upon request. Prayer ¶ f. Section 1198.5(k) provides that where an employer "fails to permit a current or former employee ... to inspect or copy personnel records within the times specified," the employee "may recover a penalty of seven hundred fifty dollars ($750)." Cal. Lab. Code § 1198.5(k). Defendant therefore includes $750 in its amount in controversy calculation. Because Plaintiff does not dispute Defendant's calculation and the Court finds it supported by the allegations of the Complaint and the statutory penalty expressly authorized in § 1198.5(k), the Court includes $750 in the amount in controversy.

Accordingly, the Court concludes Defendant has reasonably established $34,750 in unpaid wages and statutory penalties for purposes of determining the amount in controversy ($2,000 + $10,000 + $10,000 + $12,000 + $750).

When this $34,750 is combined with the approximately $52,000 in alleged lost wages, the amount in controversy exceeds $75,000 before consideration of Plaintiff's claims for punitive damages and attorneys' fees. Although those additional categories further support the exercise of diversity jurisdiction, Defendant has already satisfied its burden of establishing the jurisdictional minimum.

**iii. Punitive Damages**

"It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.* 261 F.3d 927, 945 (9th

Cir. 2001). Under California law, punitive damages may be awarded where the plaintiff proves by clear and convincing evidence that the defendant acted with oppression, fraud, or malice. Cal. Civ. Code § 3294(a). Plaintiff expressly seeks punitive damages and alleges Defendant acted "willfully and deliberately" and with "conscious disregard" of Plaintiff's rights in terminating his employment after he reported what he believed to be unlawful business practices. Compl. ¶ 26, 31, 40; Prayer ¶ i.

"In order to establish probable punitive damages, a party asserting federal diversity jurisdiction may introduce evidence of jury verdicts in cases involving analogous facts." *See Surber v. Reliance Nat. Indem. Co.*, 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000) (holding defendant did not meet its burden of providing evidence as to the potential amount of punitive damages claimed); *see also Faulkner v. Astro-Med, Inc.*, No. C 99-2562 SI, 1999 WL 820198, at *4 (N.D. Cal. Oct. 4, 1999) (observing that verdicts from other cases are relevant only to the extent the defendant demonstrates factual similarity); *but see Simmons v. PCR Tech.*, 209 F. Supp. 2d. 1029, 1033 (N.D. Cal. 2002) (holding that cited cases involving distinguishable facts are not dispositive and can be used to demonstrate the potential for large punitive damage awards).

Defendant includes approximately $45,000 in punitive damages in its calculation of the amount in controversy. NOR ¶ 38. Plaintiff argues Defendant's estimate is unsupported because Defendant relies primarily on verdicts from unrelated employment actions without demonstrating that those cases are factually analogous to the present dispute. Mot. at 6. Specifically, Plaintiff argues Defendant's cited cases involve materially different facts and therefore cannot reliably establish the amount of punitive damages at issue in this action. *Id.*

In its Notice of Removal and Opposition to Plaintiff's Motion to Remand, Defendant cites a total of seven actions concerning wrongful termination and retaliation with varying punitive damage awards in support of its estimate. NOR ¶¶ 26-27; Opp'n at 4-5. The lowest award for punitive damages among the cited cases is $52,000, while the highest award equates to $185,000,000. *Id.* Defendant's estimate is less than the lowest award cited ($45,000). NOR ¶ 38.

The cited case with the most analogous facts to the action at hand is *Ortega v. Carson Wild Wings LLC.*, JVR No. 2004090009, 2020 WL 1812491 (Cal. Super. 2020). *Ortega* consisted of similar actions concerning whistleblower retaliation under Cal. Cal. Code § 1102.5, retaliation for engaging in protected activity under Cal. Lab. Code § 98.6, and wrongful termination in violation of public policy against Defendant employer. *Id*. Plaintiff Ortega complained to her supervisor

about her employment conditions, such as missing breaks and other wage violations. *Id.* Four days after her complaint, Plaintiff was terminated. *Id.* The jury awarded Plaintiff $200,000 in damages and $100,000 in punitive damages. *Id.*

The Court need not determine whether Defendant's estimate of $45,000 accurately reflects the punitive damages ultimately recoverable in this action. Under *Faulkner* and *Simmons*, it is more likely than not that Plaintiff will receive a punitive damages award similar to *Ortega*.

However, as discussed above, Defendant has already established that the amount in controversy exceeds $75,000 based upon Plaintiff's alleged lost wages and statutory penalties alone. Accordingly, while punitive damages further support the exercise of diversity jurisdiction, the Court need not rely upon Defendant's proposed valuation in concluding that Defendant has satisfied its burden.

**iv. Attorneys' Fees**

Attorneys' fees recoverable by statute or contract are properly included in determining the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998) (holding that where an underlying statute authorizes an award of attorneys' fees, such fees may be included in determining the amount in controversy). Moreover, the Ninth Circuit has expressly held that courts must consider not only attorneys' fees incurred as of the date of removal, but also future attorneys' fees reasonably anticipated through resolution of the litigation. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that future attorneys' fees recoverable by statute are included in the amount in controversy).

Here, Plaintiff seeks attorneys' pursuant to "Labor Code sections 218.5, 226, and any other applicable statute." Prayer ¶ j. In addition to the listed labor code sections, Plaintiff claims Defendant violated Labor Code § 1102.5 which authorizes awards of reasonable attorneys' fees for a prevailing employee. Cal. Lab. Code § 1102.5(j). Because Plaintiff affirmatively seeks attorneys' fees under fee-shifting statutes, those fees are properly considered in determining the amount in controversy.

Defendant includes $42,817 in anticipated attorneys' fees in calculating the amount in controversy. NOR ¶ 38. Defendant calculates the estimate as a percentage of projected damages (33%) and cites an employment action rather than evidence specific to this case. *Id.* ¶ 36. Plaintiff does not dispute that attorneys' fees are recoverable but argues Defendant's estimate is speculative because

Defendant relies upon a fee award from an unrelated employment action and fails to provide evidence regarding anticipated billing rates, hours expended, or the expected course of this litigation. Mot. at 4-5.

The Court agrees that Defendant's estimate of $42,817 is supported by only limited evidence. Defendant calculates the estimate as a percentage of projected damages and cites an unrelated employment action rather than evidence specific to this case. However, Defendant is not required to establish the precise amount of attorneys' fees Plaintiff ultimately may recover. Rather, Defendant must demonstrate that recoverable attorneys' fees contribute to an amount in controversy exceeding $75,000. *Galt*, 142 F.3d at 1155. Given the nature of Plaintiff's employment claims, the number of causes of action asserted, the statutory fee-shifting provisions invoked, and the likelihood that significant attorney time would be required to litigate the matter through summary judgment or trial, the Court concludes that recoverable attorneys' fees contribute to the amount in controversy.

The Court need not determine whether Defendant's estimate of $42,817 accurately reflects the amount of attorneys' fees ultimately recoverable in this action. As discussed above, Defendant has already demonstrated that the amount in controversy exceeds the jurisdictional threshold based upon Plaintiff's alleged lost wages and statutory penalties. Accordingly, while attorneys' fees provide additional support for diversity jurisdiction, the Court need not rely upon Defendant's precise valuation in concluding that Defendant has satisfied its burden under 28 U.S.C. § 1332(a).

**v. Aggregate Amount in Controversy**

Having considered each category of damages individually, the Court next considers the amount in controversy in the aggregate. The Ninth Circuit has long recognized that, where a single plaintiff asserts multiple claims against a single defendant, the value of those claims is aggregated to determine whether the jurisdictional minimum has been satisfied. *Snyder v. Harris*, 394 U.S. 332, 335 (1969) (recognizing that a single plaintiff may aggregate multiple claims against a single defendant to satisfy the jurisdictional threshold).

Here, Defendant's calculation consists of Plaintiff's alleged lost wages, unpaid wages, statutory penalties, punitive damages, and attorneys' fees. NOR ¶ 38. Although Plaintiff challenges several of Defendant's assumptions, the Court's inquiry is not whether Defendant has established the precise amount Plaintiff ultimately will recover, but whether "the Defendant has the burden to show that the

amount-in-controversy requirement is met by a preponderance of the evidence." *Moe v. GEICO Indem. Co.*, 73 F.4th 757 (9th Cir. 2023). The Court concludes Defendant has satisfied that burden.

Defendant's calculation of Plaintiff's alleged lost wages is supported by Plaintiff's own allegations regarding his weekly salary and termination date. Likewise, Defendant's inclusion of unpaid wages and statutory penalties is grounded in Plaintiff's pleaded causes of action and the remedies expressly sought in the Complaint. While the Court affords limited weight to Defendant's proposed valuation of punitive damages and attorneys' fees, those categories are nonetheless properly included in the jurisdictional analysis because Plaintiff affirmatively seeks both forms of relief, and each is recoverable under applicable law if Plaintiff prevails. Moreover, Plaintiff has not presented evidence demonstrating that Defendant's assumptions are unreasonable or that the amount in controversy falls below the jurisdictional threshold. Plaintiff instead argues that Defendant's calculations are speculative because they assume continuous unemployment, include punitive damages, and estimate future attorneys' fees.

| **Alleged Damages** | **Def's Estimated Amount in Controversy** |
|---|---:|
| Lost Wages | $52,000 |
| Unpaid Wages | $2,000 |
| Labor Code § 1102.5 | $10,000 |
| Labor Code § 98.6 | $10,000 |
| Labor Code §§ 201-203 | $12,000 |
| Labor Code § 1198.5 | $750 |
| **Total Before Fees** | **$86,750** |
| Punitive Damages | Included in total, but no valuation necessary |
| Attorneys' Fees | Included in total, but no valuation necessary |
| **Total** | **$86,750+** |

The amount in controversy exceeds $75,000 before consideration of Plaintiff's claims for punitive damages and attorneys' fees. Although the Court concludes the jurisdictional minimum is satisfied based on Plaintiff's alleged lost wages and statutory penalties, Plaintiff's claims for punitive damages and recoverable attorneys' fees further reinforce that conclusion. Considering all categories of damages together, Defendant has established by a preponderance of the evidence that the amount in controversy exceeds $75,000. Accordingly, removal is proper under 28 U.S.C. § 1332(a).

## IV. CONCLUSION

Defendant has established complete diversity of the parties and that by a preponderance of the evidence, the amount in controversy, exceeds the jurisdictional threshold of $75,000. Accordingly, Defendant has met its burden of showing that it properly removed this action based on diversity jurisdiction. Plaintiff's Motion for Remand is therefore **DENIED**.

**IT IS SO ORDERED**.